IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS

**FILED**

February 11, 2022 03:47 PM
ST-2020-CV-00212

**TAMARA CHARLES**
**CLERK OF THE COURT**

### IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
### DIVISION OF ST. THOMAS AND ST. JOHN
*************

| | |
|---|---|
| **BLUEWATER CONSTRUCTION, INC.,** ) | CASE NO. ST-2020-CV-00212 |
| Plaintiff, ) | |
| ) | ACTION FOR FORECLOSURE |
| -vs- ) | OF CONSTRUCTION LIEN |
| ) | |
| **GARY HILL and WANDA HILL,** ) | |
| ) | |
| Defendants. ) | |
| **GARY HILL and WANDA HILL,** ) | ACTION FOR BREACH OF |
| ) | CONTRACT, BREACH OF IMPLIED |
| Counterclaim Plaintiffs, ) | WARRANTY OF GOOD WORKMAN- |
| ) | SHIP, NEGLIGENCE, CONVERSION, |
| -vs- ) | CIVIL CONSPIRACY, RESTITUTION |
| ) | AND DECLARATORY JUDGMENT |
| **BLUEWATER CONSTRUCTION, INC., TONY** ) | |
| **COFFELT, and SPRINGBOARD, LLC,** ) | JURY TRIAL DEMANDED |
| ) | |
| Counterclaim Defendants. ) | |

Cite as: 2022 VI Super 13

### <u>MEMORANDUM OPINION & ORDER</u>

¶1    **THIS MATTER** is before the Court on:

1.    Counterclaim Defendants Bluewater Construction, Inc. And Tony Coffelt's Reply To Hill's First Amended Complaint ("Motion To Dismiss"), filed May 10, 2021; and

2.    Counterclaim Plaintiffs' Response In Opposition To Plaintiff Bluewater Construction Inc.'s Motion To Dismiss First Amended Counterclaim ("Opposition"), filed June 8, 2021.

¶2    Counterclaim Defendants Bluewater Construction, Inc. ("Bluewater") and Tony Coffelt ("Coffelt") move to dismiss Counterclaim Plaintiffs' Gary Hill and Wanda Hill (the "Hills") First Amended Counterclaim pursuant to Virgin Islands Rules of Civil Procedure 12(b)(6) and 12(b)(7).

¶3    The Court will not dismiss the Hills' counterclaims at this stage of the proceeding under Rule 12(b)(6) as they contain sufficient factual allegations which, taken in a light most favorable to the nonmoving party and accepted as true, put Bluewater and Coffelt on notice of the claims against them. The Court will not dismiss the Hills' counterclaims under Rule 12(b)(7) as there is

*Bluewater Construction, Inc. v. Gary Hill and Wanda Hill*
Case No. ST-2020-CV-00212
**Memorandum Opinion and Order**
Page 2 of 20

**2022 VI Super 13**

no argument or other indication that the Hills have failed to join a party. Additionally, the Court adopts the Implied Warranty of Good Workmanship as a part of the common law of the U.S. Virgin Islands.

## I.   INTRODUCTION

¶4     The Hills' counterclaims concern windows that Bluewater installed in their home and scaffolding the Hills purchased for construction of their home which Bluewater purportedly utilized at other sites. The Hills' Counterclaim contains eight (8) counts, seven (7) of which they allege against the movants in this case: (1) Breach of Contract against Bluewater;[1] (2) Breach of Implied Warranty of Good Workmanship against Bluewater;[2] (3) Negligence against Bluewater;[3] (4) Conversion against Bluewater and Coffelt;[4] (5) Civil Conspiracy against Bluewater and Coffelt;[5] (6) Restitution against Bluewater and Coffelt;[6] and (7) Declaratory Judgment against Bluewater.[7]

¶5     Bluewater and Coffelt argue that there is no agreement between Bluewater and the Hills, only an agreement between Bluewater and Springboard, LLC ("Springboard"), and thus the Breach of Contract claim should be dismissed.[8] Bluewater and Coffelt state that the Hills fail to give "specific and articulable facts as to how the installation [of windows] was not workmanlike nor what the 'existing standards of construction' actually are" so the Breach of Implied Warranty of Good Workmanship claim should be dismissed.[9] Bluewater and Coffelt also argue that the Hills' assertion that Bluewater failed to use sound materials is contradictory to their assertion that Bluewater failed to supply sound materials in their Breach of Implied Warranty of Good Workmanship claim.[10] Bluewater and Coffelt assert that the Hills fail to provide specific facts as to how Bluewater owed a legal duty to the Hills, how Bluewater breached that duty, and how Bluewater proximately caused damage to the Hills' windows, and thus the Negligence claim should be dismissed.[11]

¶6     Additionally, Bluewater and Coffelt assert that because Coffelt rented and leased scaffolding to Bluewater for use elsewhere, Bluewater believed it was properly renting the Hills' scaffolding so it had no intent to interfere with the Hills' property and therefore the Conversion claim should be dismissed.[12] Bluewater and Coffelt argue that there cannot be a conspiracy to commit a tort when Bluewater believed its purchase and rental of the scaffolding was proper and that the Hills do not provide specific facts as to how the conspiracy transpired, thus the Civil

[1] Countercl. Pls.' First Am. Countercl. 6-7.
[2] Countercl. Pls.' First Am. Countercl. 8.
[3] Countercl. Pls.' First Am. Countercl. 8-9.
[4] Countercl. Pls.' First Am. Countercl. 11-12.
[5] Countercl. Pls.' First Am. Countercl. 12-13.
[6] Countercl. Pls.' First Am. Countercl. 13.
[7] Countercl. Pls.' First Am. Countercl. 14.
[8] Countercl. Defs.' Mot. To Dismiss 3-4.
[9] Countercl. Defs.' Mot. To Dismiss 4-5.
[10] Countercl. Defs.' Mot. To Dismiss 4-5.
[11] Countercl. Defs.' Mot. To Dismiss 5-6.
[12] Countercl. Defs.' Mot. To Dismiss 6-7.

*Bluewater Construction, Inc. v. Gary Hill and Wanda Hill*
Case No. ST-2020-CV-00212
**Memorandum Opinion and Order**
**Page 3 of 20**

**2022 VI Super 13**

Conspiracy claim should be dismissed.[13] Bluewater and Coffelt claim that the Hills do not provide specific facts as to how the Hills conferred a benefit to Bluewater with their scaffolding, consequently the Restitution clam should be dismissed.[14] Lastly, Bluewater and Coffelt contend that the Hills' Declaratory Judgment claim does not seek to have any legal relation or status between parties determined, rather it just seeks to have Bluewater's cause of action be declared "improper and invalid," and therefore there is no relief available to them under the Declaratory Judgment Act so their Declaratory Judgment claim should be dismissed.[15]

¶7     The Hills reply in their Opposition that Bluewater and Coffelt rely on the wrong pleading standard: Bluewater and Coffelt allege the Hills must satisfy the "plausibility" standard declared by *Iqbal/Twombly* when the Court has actually adopted a "notice pleading" standard under Virgin Islands Rule of Civil Procedure 8(a).[16] The Hills argue that their contention that they are third-party beneficiaries of the subcontract between Springboard and Bluewater for window installation on their house adequately alleges facts that puts Bluewater on notice of the Breach of Contract claim against it.[17] The Hills assert that Bluewater and Coffelt inappropriately use the *Iqbal/Twombly* plausibility standard when arguing that their Breach of the Implied Warranty of Good Workmanship claim should be dismissed, and because their claim gives Bluewater notice of the legal theory behind their claim as well as the basic facts, that claim should not be dismissed either.[18]

¶8     The Hills also point out there is no contradiction in alleging Bluewater failed to *use* sound materials while also alleging Bluewater failed to *furnish* materials for its work, and in fact those allegations "are wholly consistent with the argument that Bluewater should have both furnished and used appropriate waterproofing materials as requested by the Hills."[19] The Hills further argue that even if there is inconsistency or contradictory statements in their pleadings, Virgin Islands Rule of Civil Procedure 8(d)(2)[20] explicitly allows for alternative pleadings, so dismissal of their Implied Warranty of Good Workmanship claim would be inappropriate on those grounds as well.[21]

¶9     Next, the Hills argue that as for Coffelt and Bluewater's motion to dismiss their Negligence claim, Bluewater and Coffelt again "fundamentally misunderstand[] what is necessary to state a cause of action under Rule 8's notice pleading standard."[22] The Hills state that their First Amended Counterclaim alleges that Bluewater "had a duty to install the windows in a professional manner, that Bluewater failed to follow the Hills' installation requests and guidance during the initial installation of the windows, that Bluewater also failed to correct their installation work," and that

---

[13] Countercl. Defs.' Mot. To Dismiss 7-8.
[14] Countercl. Defs.' Mot. To Dismiss 9.
[15] Countercl. Defs.' Mot. To Dismiss 10-11.
[16] Countercl. Pls.' Opp'n 2-3.
[17] Countercl. Pls.' Opp'n 3-4.
[18] Countercl. Pls.' Opp'n 4-5.
[19] Countercl. Pls.' Opp'n 5.
[20] V.I.R. CIV. P. 8(d)(2) ("Alternative Statements of a Claim or Defense. A party may set out two or more statements of a claim or defense alternatively or hypothetically, in separate counts or defenses. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.").
[21] Countercl. Pls.' Opp'n 5-6.
[22] Countercl. Pls.' Opp'n 6.

*Bluewater Construction, Inc. v. Gary Hill and Wanda Hill*
Case No. ST-2020-CV-00212
Memorandum Opinion and Order
Page 4 of 20

**2022 VI Super 13**

the Hills suffered damages from the leaky windows and costs to repair the work.[23] The Hills state this is sufficient to put Bluewater on notice of a Negligence claim.

¶10     The Hills argue that Coffelt and Bluewater's contention that it could not convert the Hills' scaffolding because it believed it was properly renting the scaffolding is a factual determination that cannot be made at the motion to dismiss stage.[24] Additionally, the Hills contend that their claim that Coffelt leased the scaffolding to Bluewater says "nothing about what Bluewater knew (or subsequently came to know) about the scaffolding."[25] Lastly, the Hills argue that the case cited by Bluewater is irrelevant, as all it states is that at the motion to dismiss stage a plaintiff cannot be bound by admissions in a superseded pleading.[26] Thus, the Hills argue that their Conversion claim should not be dismissed.[27]

¶11     As for the dismissal of their Civil Conspiracy claim, the Hills again state that Bluewater and Coffelt make the same error as to the pleading standard, and that their contention that there cannot be a conspiracy to commit a tort when one party properly believed it had purchased the scaffolding might work as a defense to Conversion, but it does not alter that the Hills have made a sufficient pleading of Civil Conspiracy.[28] The Hills state that they pled that Bluewater and Coffelt "acted in concert . . . pursuant to a common design to lease the Hills' new scaffolding without the authorization or the permission of the Hills;" Coffelt then began working for Bluewater; and Bluewater and Coffelt never remitted any of the rental payments for the Hills' scaffolding.[29] The Hills argue this is enough to put Bluewater and Coffelt on notice of their claim and thus the claim should not be dismissed.[30]

¶12     The Hills then point out that while Bluewater and Coffelt argue the Hills cannot seek Restitution because of an adequate remedy at law—their Breach of Contract claim—the Restitution claim is directed at Bluewater and Coffelt's unauthorized use of the scaffolding, which was not governed by the contract.[31] The Hills also argue that Bluewater and Coffelt's argument that the Hills fail to specify how they conferred a benefit on Bluewater by giving them scaffolding is "patently frivolous."[32] The Hills state that their allegation that Bluewater used the uncompensated scaffolding on other jobsites is sufficient to show a material benefit to Bluewater and thus their Restitution claim should not be dismissed.[33]

¶13     Lastly, the Hills explain that Bluewater and Coffelt cite to extra-territorial federal cases for their proposition that declaratory judgment is not available and instead argue that the Virgin

---

[23] Countercl. Pls.' Opp'n 6.
[24] Countercl. Pls.' Opp'n 7.
[25] Countercl. Pls.' Opp'n 7.
[26] Countercl. Pls.' Opp'n 7-8.
[27] Countercl. Pls.' Opp'n 7-8.
[28] Countercl. Pls.' Opp'n 8.
[29] Countercl. Pls.' Opp'n 8-9.
[30] Countercl. Pls.' Opp'n 9.
[31] Countercl. Pls.' Opp'n 9.
[32] Countercl. Pls.' Opp'n 10.
[33] Countercl. Pls.' Opp'n 10.

*Bluewater Construction, Inc. v. Gary Hill and Wanda Hill*
Case No. ST-2020-CV-00212
**Memorandum Opinion and Order**
**Page 5 of 20**

2022 VI Super 13

Islands Declaratory Act is more robust.[34] The Hills cite to *Catmac, Inc. v. Balthazar Mgmt. Virgin Islands, LLC*[35] for the proposition that the Act "vests the Superior Court with the discretionary 'power to declare the rights, status, and other legal relations whether or not further relief is or could be claimed' and 'the declaration may be either affirmative or negative in form and effect'[.]"[36]

¶14    The Hills state that Bluewater alleges a contract existed for the Hills to sell them scaffolding at a reduced price and the Hills deny that there was a contract, and that in response to their demand for compensation for the scaffolding Bluewater threatened the Hills with criminal prosecution.[37] Thus, they argue they have plead facts sufficient to enjoin Bluewater and Coffelt from further retaliatory behavior.[38] Additionally, Bluewater also alleges that Springboard was authorized to bind the Hills with respect to Bluewater's work and the Hills deny Bluewater ever furnished or delivered materials to perform work, thus the Hills are entitled to a court determination of whether the work performed by Bluewater supports Bluewater's lien on the Hills' property. Therefore, the Hills argue their Declaratory Judgment claim should not be dismissed.

## II.    LEGAL STANDARD

### A.  Motion To Dismiss.

¶15    Virgin Islands Rule of Civil Procedure 12(b)(6) allows a party to challenge a pleading for "failure to state a claim upon which relief can be granted."[39] To survive a 12(b)(6) motion, the plaintiff must provide "a short and plain statement of the claim showing that the pleader is entitled to relief,"[40] and "[t]he facts alleged in the pleadings, and any inferences drawn therefrom must be viewed in the light most favorable to the plaintiff."[41] All material allegations in the complaint are taken as true, and the Court must construe all facts in a light most favorable to the non-moving party.[42]

¶16    "Even if a complaint is 'vague,' 'inartfully drafted,' 'a bare-bones outline,' or 'not a model of specificity,' the complaint may still be adequate so long as it can reasonably be read as supporting a claim for relief[.]"[43] Further, "the purpose of the notice pleading standard is to avoid 'dismissals of cases based on failure to allege specific facts which, if established, plausibly entitle

---

[34] Countercl. Pls.' Opp'n 10.

[35] No. ST-2017-CV-00035, 2017 V.I. LEXIS 178, at *6-7 (V.I. Super. Ct. June 29, 2017).

[36] Countercl. Pls.' Opp'n 11.

[37] Countercl. Pls.' Opp'n 11.

[38] Countercl. Pls.' Opp'n 10

[39] V.I.R. CIV. P. 12(b)(6).

[40] V.I.R. CIV. P. 8(a)(2).

[41] *Adams v. North West Company (International), Inc.*, 63 V.I. 427, 438 (Super. Ct. 2015) (citing *Benjamin v. AIG Ins. Co. of Puerto Rico*, 56 V.I. 558, 566 (V.I. 2012)).

[42] *L'Henri, Inc. v. Vulcan Materials Co.*, Civ. No. 206–170, 2010 WL 924259, at *1 (D.V.I. Mar. 11, 2010) (citing *Christopher v. Harbury*, 536 U.S. 403, 406 (2002)).

[43] *Basic Servs., Inc. v. Gov't of Virgin Islands*, 2019 VI 21, ¶12 (citing *Casaday v. Allstate Ins. Co.*, 232 P.3d 1075, 1080 (Utah App. 2010)).

***Bluewater Construction, Inc. v. Gary Hill and Wanda Hill***
Case No. ST-2020-CV-00212
**Memorandum Opinion and Order**
**Page 6 of 20**

**2022 VI Super 13**

the pleader to relief.'"[44] Virgin Islands Rule of Civil Procedure 8(a) states that a claim for relief must contain a short statement of the grounds for the Court's jurisdiction, "a short and plain statement of the claim showing that the pleader is entitled to relief — because this is a notice pleading jurisdiction," and "a demand for the relief sought, which may include relief in the alternative or different types of relief."[45]

### B. Breach of Contract; Third Party Beneficiaries.

**¶17** The basic elements of "a breach of contract claim are '(1) an agreement; (2) a duty created by that agreement; (3) a breach of that duty; and (4) damages.'"[46] While breach of contract claims are usually brought by parties to the contract, "a third party that was an intended beneficiary of the promise may also bring an action to enforce a promise in the contract, even though they did not sign the contract."[47]

### C. Breach of Implied Warranty of Good Workmanship-*Banks* analysis.

**¶18** The implied warranty of good workmanship is also sometimes referred to as the implied warranty of workmanlike construction or the implied warranty of workmanlike performance, as well as other similar formulations.[48] For consistency, and so the claim is readily decipherable to the general public, the Court will refer to this claim simply as the implied warranty of good workmanship.

**¶19** Prior to the Virgin Islands Supreme Court decision in *Banks v. Int'l Rental & Leasing Corp.*,[49] this Court recognized the implied warranty of good workmanship, citing to the common law of other jurisdictions.[50] However, the Supreme Court of the Virgin Islands explained in *Banks* that Virgin Islands courts should not mechanically follow the Restatements of the American Law Institute or the common law of other jurisdictions and courts should instead apply a three-prong

---

[44] *Basic Servs., Inc.*, ¶10 (citing V.I. R. CIV. P. 8 Reporter's Note; and *Mills-Williams v. Mapp*, 67 V.I. 574, 585 (V.I. 2017)).

[45] V.I. R. CIV. P. 8(a)

[46] *Basic Servs., Inc.*, ¶19 (quoting *Phillip v. Marsh-Monsanto*, 66 V.I. 612, 621 (V.I. 2017)).

[47] *Petrus v. Queen Charlotte Hotel Corp.*, 56 V.I. 548, 555 (V.I. 2012) (citing RESTATEMENT (SECOND) OF CONTRACTS § 304).

[48] *See, e.g., Alaska Pac. Assurance Co. v. Collins*, 794 P.2d 936, 939 (Alaska 1990) ("The case against Collins proceeded on three theories: (1) that Collins had breached the implied warranty of workmanlike construction . . . ."); *Coney v. Stewart*, 562 S.W.2d 619, 620 (Ark. 1978) ("Appellant's argument is essentially to the effect that the evidence 'to establish a breach of the implied warranty of proper construction and sound workmanship' is not supported by the evidence.").

[49] 55 V.I. 967 (V.I. 2011).

[50] *See Raimer v. Stout*, 14 V.I. 568, 579 (V.I. Super. Ct. 1978) (citing *Lewis v. Anchorage Asphalt Paving Co.*, 535 P.2d 1188, 1196 (Alaska 1975)) ("It is well settled that in building or construction contracts whenever someone holds himself out to be specially qualified to do a particular type of work, there is an implied warranty that the work will be done in a workmanlike manner, and that the resulting building, product, etc. will be reasonably fit for its intended use. Thus, there was also an implied warranty to perform the contract in a workmanlike manner which was virtually coextensive with the express warranty cited above."); *see also Hewitt v. Morton*, No. 771/1992, 1999 V.I. LEXIS 50, at *16 (V.I. Super. Ct. Apr. 14, 1999) (quoting *Raimer*, 14 V.I. at 579).

analysis to determine what common law rule should apply in the Virgin Islands.[51] The first step in the analysis is "whether any Virgin Islands courts have previously adopted a particular rule"; the second step is "determining the position taken by a majority of courts from other jurisdictions"; and the third step is "identifying the best rule for the Virgin Islands."[52]

**¶20** Currently, neither the Virgin Islands Supreme Court nor the Superior Court has recognized this cause of action post-*Banks*. Following the guidance of the Virgin Islands Supreme Court, on October 4, 2021, the Court ordered the parties to brief the issue and supply the Court with the parties' analyses by October 29, 2021.[53] Bluewater and Coffelt, in their brief filed on October 29, 2021, argue that the Court should adopt the implied warranty of good workmanship as a part of the common law of the Virgin Islands; that the implied warranty should arise as an operation of law; that whether something was constructed in a workmanlike manner should depend on the nature and purpose of the project; and that the standard can be superseded, but not obviated, by an express provision in a contract.[54] The Hills did not provide a brief on the issue. Additionally, the Court conducts its own *Banks* analysis below.

### 1. Other Virgin Islands Courts.

**¶21** As cited above,[55] this Court twice recognized the implied warranty of good workmanship, in *Raimer v. Stout* and *Hewitt v. Morton*, both premised on the Alaskan case of *Lewis v. Anchorage Asphalt Paving Co.* Additionally, the District Court of the Virgin Islands has recognized numerous implied warranties, including the implied warranty of good workmanship, based on the formulation in the Restatement: "Virgin Islands law recognizes multiple implied warranties that 'arise by operation of law.'"[56] The District Court in *Livingston* quoted Judge Curtis Gomez from *Vanderwall v. Marriott Ownership Resorts (St. Thomas)*,[57] whose formulation of the warranty was also based on the Restatement:

> Implied warranties which arise under Virgin Islands law include the implied warranty of fitness for a particular purpose, V.I. Code Ann. tit. 11a, § 2-315; the implied warranty of merchantability, V.I. Code Ann. tit. 11a, § 2-314; the implied warranty of good workmanship, Restatement (Second) of Property §§ 12.2, 19.1; Restatement (Third) of Property (Servitudes) § 6.20; and the implied warranty of habitability, Restatement (Second) of Property §§ 5.1-5.6, 17.6.

---

[51] *Id.* at 980 ("[W]e conclude that 1 V.I.C. § 4 does not incorporate all of the Restatement provisions as if they were actual statutory text; nor does it delegate to the American Law Institute the authority to enact changes in the law of the Virgin Islands in all of the areas covered by the Restatements.").

[52] *Gov't of the V.I. v. Connor*, 60 V.I. 597, 603 (V.I. 2014) (citing first *Banks*, 55 V.I. at 981, then *Simon v. Joseph*, 59 V.I. 611, 623-25 (V.I. 2013), then *Matthew v. Herman*, 56 V.I. 674, 683-84 (V.I. 2012), and last Kristen D. Adams, *The Folly of Uniformity? Lessons From the Restatement Movement*, 33 HOFSTRA L. REV. 423, 424 (2004)).

[53] *Malloy v. Reyes*, 61 V.I. 163, 176 (V.I. 2014) ("Here, the Superior Court erred in failing to give the parties an opportunity to brief the issue of abandonment of an easement under the *Banks* framework, and further erred by failing to conduct a *Banks* analysis at all.").

[54] Countercl. Defs.' Br. 5-6.

[55] *See supra* n.50.

[56] *Livingston v. Berger*, 1:19-cv-00012, 2020 U.S. Dist. LEXIS 252720, at *7 (D.V.I. Mar. 23, 2020).

[57] No. 2012-84, 2013 U.S. Dist. LEXIS 117764 (D.V.I. Aug. 20, 2013).

> The implied warranties of merchantability and fitness are specific to transactions involving the sale of goods. See V.I. Code ann. tit. 11a, §§ 2-314, 2-315. The implied warranty of good workmanship is applied in cases involving construction or repair. See Restatement (Second) of Property §§ 12.2, 19.1; Restatement (Third) of Property (Servitudes) § 6.20. The implied warranty of habitability applies to leased real property. See Restatement (Second) of Property §§ 5.1-5.6, 17.6.[58]

¶22 Thus, prior practice in Virgin Islands courts provides some weight for the adoption of the implied warranty of good workmanship.

## 2. Majority Position of Other Jurisdictions.

¶23 A vast majority of courts outside the Virgin Islands have recognized the implied warranty of good workmanship.[59] The rule usually arises in the context of a builder-seller constructing a

---

[58] *Livingston*, 2020 U.S. Dist. LEXIS 252720, at *8 (quoting *Vanderwall*, 2013 U.S. Dist. LEXIS 117764, at *13).

[59] *Lewis*, 535 P.2d at 1196 (holding that in Alaska "it is well settled that, in building or construction contracts whenever someone holds himself out to be specially qualified to do a particular type of work, there is an implied warranty that the work will be done in a workmanlike manner, and that the resulting building, product, etc. will be reasonably fit for its intended use."); *Reliable Elec. Co. v. Clinton Campbell Contractor*, 459 P.2d 98, 101 (Ariz. Ct. App. 1969) (explaining that someone who undertakes a service must perform the service in a "good workmanlike manner and in a manner befitting a skilled contractor" and finding a breach of the implied warranty of good workmanship in the design and installation of a kiln); *Bullington v. Palangio*, 45 S.W.3d 834, 839 (Ark. 2001) ("[W]e have made it clear that implied warranties of habitability, sound workmanship, and proper construction are given by operation of law and are intended to hold a builder-vendor to a standard of fairness."); *Pollard v. Saxe & Yolles Dev. Co.*, 525 P.2d 88, 91 (Cal. 1974) (adopting an implied warranty that a "completed structure was designed and constructed in a reasonably workmanlike manner"); *Samuelson v. Douthirt*, 529 P.2d 631, 633 (Colo. 1974) (holding "for the first time in Colorado, that a contract to furnish services carries with it an implied warranty of workmanlike conduct"); *Ferrigno v. Pep Boys*, 818 A.2d 903, 904 (Conn. Super. Ct. 2003) ("It is an implied condition of every service contract that the service will be performed in a workmanlike manner."); *Smith v. Berwin Builders, Inc.*, 287 A.2d 693, 695 (Del. Super. Ct. 1972) ("However, the law in Delaware appears to recognize an implied builder's warranty of good quality and workmanship."); *Poole v. Terminix Co. of Maryland & Washington, Inc.*, 84 A.2d 699, 702 (D.C. 1951) (holding that a breach of the implied warranty to do insulation work in a workmanlike way was time-barred by the statute of limitations); *Roland v. Byrd*, 294 S.E.2d 626, 627 (Ga. Ct. App. 1982) ("However, there is in a well-drilling contract an implied warranty on the part of the driller that the service shall be performed in a workmanlike manner."); *Hoffman v. Simplot Aviation, Inc.*, 539 P.2d 584, 588 (Idaho 1975) (opining that contracts for personal services contain an implied warranty to be carried out in a workmanlike manner); *Meyers v. Woods*, 871 N.E.2d 160, 170 (Ill. App. Ct. 2007) ("A person who contracts to perform construction work impliedly warrants to do the work in a reasonably workmanlike manner, and the failure to do so results in a breach of contract."); *Williams v. Younginer*, 851 N.E.2d 351, 357 (Ind. Ct. App. 2006) (finding that the implied warranty of reasonable workmanship "are collateral and independent rights not subject to merger" in a deed); *Luana Sav. Bank v. Pro-Build Holdings, Inc.*, 856 N.W.2d 892, 902 (Iowa 2014) (declining to extend the protection of the implied warranty of workmanlike construction to banks and other financial institutions); *In re Talbott's Estate*, 337 P.2d 986, 989 (Kan. 1959) ("[I]t is generally recognized that when a party binds himself by contract to . . . perform a service . . . there is an implied agreement or warranty, which the law annexes to the contract, that he will do a workmanlike job and will use reasonable and appropriate care and skill."); *Real Estate Mktg. v. Franz*, 885 S.W.2d 921, 926 (Ky. 1994) (declining to extend the protections of the implied warranty of construction in a workmanlike manner to a subsequent buyer of a house not in privity with the builder); *Williams v. Alfred*, 748 So. 2d 42 (La. Ct. App. 1999) (finding a breach of the implied warranty of good

*Bluewater Construction, Inc. v. Gary Hill and Wanda Hill*
Case No. ST-2020-CV-00212
**Memorandum Opinion and Order**
**Page 9 of 20**

2022 VI Super 13

workmanship for defective masonry work); *Wimmer v. Down East Properties, Inc.*, 406 A.2d 88, 93 (Me. 1979) ("The trial court did not err in awarding damages for repair of the leak around the chimney. Such a defect is within the scope of the implied warranty of workmanship."); *Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co.*, 788 N.E.2d 522, 531 (Mass. 2003) ("'When a party binds himself by contract to do a work or to perform a service, he agrees by implication to do a workmanlike job and to use reasonable and appropriate care and skill in doing it.'" (quoting *Abrams v. Factory Mut. Liab. Ins. Co.*, 10 N.E.2d 82, 83 (Mass. 1937))); *Ingram v. Interstate Motor Freight Systems*, 321 N.W.2d 731 (Mich. Ct. App. 1982) (finding no breach of the implied warranty of workmanlike service where an injured employee was not performing a service for a company at the time of his injury); *Parker v. Thornton*, 596 So. 2d 854, 857 (Miss. 1992) ("Thornton acknowledges that between a builder-vendor of a new home and his vendee there is an implied warranty that the home was built in a workmanlike manner and it is suitable for habitation."); *Ribando v. Sullivan*, 588 S.W.2d 120, 123 (Mo. Ct. App. 1979) ("This case is therefore controlled by the old, well established doctrine of an implied warranty or condition of good workmanship which existed prior to *Old Warson* and still exists independent of the new doctrine of implied warranty of habitability."); *Chandler v. Madsen*, 642 P.2d 1028, 1031 (Mont. 1982) ("Therefore, we hold that the builder-vendor of a new home impliedly warrants that the residence is constructed in a workmanlike manner and is suitable for habitation."); *Moglia v. McNeil Co.*, 700 N.W.2d 608 (Neb. 2005) (extending the implied warranty of workmanlike performance "to subsequent home purchasers as against general contractors"); *Daniel, Mann, Johnson & Mendenhall v. Hilton Hotels Corp.*, 642 P.2d 1086, 1087 (Nev. 1982) (holding that "it is sufficient to instruct the jury that appellant had an implied duty to perform in a workmanlike manner"); *Lempke v. Dagenais*, 547 A.2d 290, 291 (N.H. 1988) (holding that "privity of contract is not necessary for a subsequent purchaser to sue a builder or contractor under an implied warranty theory for latent defects which manifest themselves within a reasonable time after purchase and which cause economic harm"); *Aronsohn v. Mandara*, 484 A.2d 675 (N.J. 1984) (holding that "the privity requirement should be abandoned in suits brought by a homeowner against a contractor for violation of an implied promise of good workmanship"); *Mascarenas v. Jaramillo*, 806 P.2d 59, 61 (N.M. 1991) (recognizing an implied warranty to perform work in a skilled and workmanlike fashion); *Robey v. Parnell*, 392 P.3d 642 (N.M. Ct. App. 2017) (finding defendant breached the implied warranty that a well will be dug in a workmanlike manner); *De Roche v. Dame*, 75 A.D.2d 384, 386 (N.Y. App. Div. 1980) ("The cause of action based upon implied warranty of habitability and workmanlike construction, however, should not have been dismissed."); *Hartley v. Ballou*, 209 S.E.2d 776, 783 (N.C. 1974) ("[W]e hold that . . . the vendor . . . shall be held to impliedly warrant to the initial vendee that . . . the dwelling, together with all its fixtures, is sufficiently free from major structural defects, and is constructed in a workmanlike manner, so as to meet the standard of workmanlike quality then prevailing at the time and place of construction[.]"); *Jones v. Centex Homes*, 967 N.E.2d 1199, 1201 (Ohio 2012) ("We concluded that although the obligation to construct in a workmanlike manner may arise from a contract, the cause of action is not based on contract but on a duty imposed by law."); *Elden v. Simmons*, 631 P.2d 739, 741 (Okla. 1981) ("[T]his Court, in abandoning the ancient doctrine of caveat emptor, held that the builder-vendor of a new home impliedly warrants that the new home is or will be completed in a workmanlike manner and is or will be reasonably fit for occupancy as a place of abode, and that such an implied warranty exists, as a matter of law."); *Cabal v. Donnelly*, 727 P.2d 111, 113 (Or. 1986) ("When a vendor builds a new house for the purpose of sale to the general public, the sale of the house carries with it an implied warranty that the house was constructed in a reasonably workmanlike manner and is fit for habitation."); *Tyus v. Resta*, 476 A.2d 427, 431 (Pa. Super. Ct.) ("Pennsylvania numbered among the first jurisdictions acknowledging an implied warranty of habitability, as well as an implied warranty of reasonable workmanship, in contracts whereby builder-vendors sold newly constructed houses."); *Nichols v. R.R. Beaufort & Assocs.*, 727 A.2d 174 (R.I. 1999) (abandoning the privity requirement for breach of the implied warranty of good workmanship causes of action); *Kennedy v. Columbia Lumber & Mfg. Co.*, 384 S.E.2d 730, 736 (S.C. 1989) ("As recognized by the Court of Appeals in *Carolina Winds*, a builder who contracts to construct a dwelling impliedly warrants that the work undertaken will be performed in a careful, diligent, workmanlike manner."); *Waggoner v. Midwestern Dev.*, 154 N.W.2d 803, 809 (S.D. 1967) ("We conclude that where in the sale of a new house the vendor is also a builder of houses for sale there is an implied warranty of reasonable workmanship and habitability surviving the delivery of deed."); *Dixon v. Mountain City Constr. Co.*, 632 S.W.2d 538 (Tenn. 1982) (adopting the implied warranty of workmanlike construction); *Gonzales v. Southwest Olshan Found. Repair Co., LLC*, 400 S.W.3d 52 (Tex. 2013) (recognizing an implied warranty of good workmanship and an implied warranty of good and workmanlike repair); *Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 221 P.3d 234 (Utah 2009) (recognizing for the first time in Utah the implied warranty of workmanlike manner); *Long Trail House Condo. Ass'n v. Engelberth Constr., Inc.*, 59 A.3d 752 (Vt. 2012) (holding that contractual privity is still a requirement for an

home or other building to a first-time purchaser.[60] Some states have only extended the rule to protect home-buyers, and not banks or foreclosing lenders.[61] However, the rule has also been applied in some jurisdictions to other situations beyond the construction of a new home, such as construction of a new roof over an indoor pool area;[62] the installation of insulation;[63] the installation of an in-floor heating system;[64] and the drilling of a well.[65]

¶24     While the claim often appears along with the implied warrant of habitability, courts have indicated the implied warranties are different:[66] the implied warranty of habitability warrants that

---

implied warranty of good workmanship claim); *Bethel v. Mays Heating & Air, Inc.*, 66 Va. Cir. 425 (Va. Cir. Ct. 1998) ("[U]nder Virginia law, an implied warranty of good and workmanlike character does accompany undertakings to repair."); *Gamble v. Main*, 300 S.E.2d 110 (W. Va. 1983) (adopting the implied warranty of proper workmanship); and *Hatch v. Walton*, 343 P.3d 390 (Wyo. 2015) (finding the evidence insufficient that a builder breached the implied warranty of workmanship).

[60] *Pollard*, 525 P.2d at 91 ("Therefore, we conclude builders and sellers of new construction should be held to what is impliedly represented — that the completed structure was designed and constructed in a reasonably workmanlike manner."); *Crawley v. Terhune*, 437 S.W.2d 743, 745 (Ky. Ct. App. 1969) ("[W]e are disposed to adopt the minority view to the extent of holding that in the sale of a new dwelling by the builder there is an implied warranty that in its major structural features the dwelling was constructed in a workmanlike manner and using suitable materials."); *Brown v. Elton Chalk, Inc.*, 358 So. 2d 721, 722 (Miss. 1978) ("The appellants are correct in their contention that as between the builder-vendor of a new home and his vendee there is an implied warranty that the home was built in a workmanlike manner and that it is suitable for habitation. However, a party bringing suit based upon such an implied warranty must allege in his declaration, inter alia, that (1) the house is new; and (2) that the plaintiff was the first purchaser.").

[61] *Luana Sav. Bank*, 856 N.W.2d at 902 ("Financial institutions, like professional investors in real estate, do not need the protection of judicially created implied warranties. The bank simply is not the type of innocent consumer the implied warranty of workmanlike construction was judicially adopted to protect.").

[62] *Graham Constr. Co. v. Earl*, 208 S.W.3d 106, 111 (Ark. 2005) ("Here, Graham's express warranty that the roof would not leak, coupled with his implied warranty of sound workmanship and proper construction under *Bullington, supra*, are consistent with one another and take precedence over Earl's implied warranty of his material, plans, and specifications.").

[63] *Poole*, 84 A.2d at 700 ("The alleged breach of implied warranty lies in the unworkmanlike insulating activities of the defendant on April 15, 1946 when holes were drilled around the perimeter of the appellant's cellar.").

[64] *Meyers*, 871 N.E.2d at 171 ("Here, the trial judge made the determination, after hearing all the evidence, that the work was not done by defendant in a reasonably workmanlike manner. The trial court noted that defendant had installed in-floor heating systems before and knew that antifreeze would be necessary in a system that was in an 'out-building', would not be occupied, and was exposed to the cold northern Illinois winters.").

[65] *Robey*, 392 P.3d at 651 ("The implied warranty in a contract for drilling a water well is that 'the work shall be done in a workmanlike manner with the ordinary skill of those who undertake such work.' (quoting *Davis v. Merrick*, 345 P.2d 1042, 1043 (N.M. 1959))).

[66] *Council of Unit Owners v. Simpler*, 603 A.2d 792, 795 (Del. Super. 1991) (suggesting warranties of habitability and workmanship are separate and distinct); *Schmeck v. Sea Oats Condominium Ass'n Inc.*, 441 So. 2d 1092, 1097 (Fla. Dist. Ct. App. 1983) (developer may be liable for breach of warranty to construct in workmanlike manner or for failure to provide a habitable dwelling); *George B. Gilmore Co. v. Garrett*, 582 So. 2d 387, 391 (Miss. 1991) (concluding that builder owes duties of workmanlike performance and habitability to homeowner); *Chandler v. Madsen*, 642 P.2d 1028, 1031 (Mont. 1982) (builder/vendor of residence impliedly warrants both its habitability and its workmanlike manner of construction); *Aronsohn*, 484 A.2d 675 at 681 (distinguishing between the implied warrant of habitability and the implied warrant of good workmanship); *Bednarski v. Hideout Homes & Realty Inc.*, 711 F. Supp. 823, 827 (M.D. Pa. 1989) (rejecting defendant's motion to dismiss, court comments that Pennsylvania courts recognize implied warranties of habitability and workmanlike construction for residential dwellings); *Kennedy v. Columbia Lumber & Mfg. Co.*, 384 S.E.2d 730, 736 (S.C. 1989) (holding implied warranty of workmanlike service is distinct from the warranty of habitability); *Evans v. Stiles*, 689 S.W.2d 399 (Tex. 1985) ("[T]his Court plainly stated that the

*Bluewater Construction, Inc. v. Gary Hill and Wanda Hill*
Case No. ST-2020-CV-00212
Memorandum Opinion and Order
Page 11 of 20

**2022 VI Super 13**

a house is fit for dwelling while the implied warranty of good workmanship warrants that services are provided with the quality of work that would be done by a worker of average skill and experience in their field. The implied warranty of good workmanship does not require that work be completed perfectly, but rather the work is judged on the basis of whether it was reasonably done given the circumstances.[67] In essence, the structure may still be livable, but some portion of it is defective. Some defects which courts have found to breach the warranty include when cracks have been found in concrete decking,[68] electrical problems with a kiln,[69] the faulty installation of plumbing which then flooded a house,[70] failure to connect a washing machine drain,[71] and defective installation of a linoleum floor.[72]

### 3. Soundest Rule For The Virgin Islands.

¶25    The last step of the *Banks* analysis requires the Court to consider what the soundest rule for the Virgin Islands might be considering the many unique aspects of the territory. In light of the previous practice of courts in this jurisdiction, the overwhelming trend of a majority of the jurisdictions, as well as that the Court believes it is in accord with local public policy, the Court will adopt the implied warranty of good workmanship as a unique cause of action, separate from the implied warranty of habitability, as a part of the common law of U.S. Virgin Islands.[73] The elements a plaintiff must prove are: (1) the existence of the implied warranty (determined by showing the defendant sold repair or construction services to the plaintiff or for the benefit of the plaintiff); (2) breach of the implied warranty (shown by the services were not carried out in a

---

builder/vendor warrants both workmanship 'and' habitability. If we had intended that the warranty extend only to habitability, we would not have used the word 'and.'"); *Meadowbrook Condominium Ass'n v. South Burlington Realty Corp.*, 565 A.2d 238, 240-41 (Vt. 1989) (claim alleging breach of warranty of workmanship may exist notwithstanding fact defects fail to render dwelling uninhabitable).

[67] *See, e.g., S.D. Bd. of Regents v. Global Synthetics Envtl., LLC*, 270 F. Supp. 3d 1088, 1106 (S.D.D.C. 2017) ("The builder is not required to construct a perfect [structure] and in determining whether a [structure] is defective the test is reasonableness and not perfection." (quoting *Waggoner v. Midwestern Dev.*, 154 N.W.2d 803, 809 (S.D. 1967)).

[68] *Aqua Pool Renovations, Inc. v. Paradise Manor Cmty. Club, Inc.*, 880 So. 2d 875, 883 (La. Ct. App. 2004).

[69] *Reliable Elec. Co. v. Clinton Campbell Contractor*, 459 P.2d 98, 100 (Ariz. Ct. App. 1969) (due to an electrical malfunction, the dome on its brick kiln was spontaneously hoisted or raised beyond the normal limits, thereby shearing the lifting cables, and thus allowing the dome of the kiln to crash down, substantially demolishing the dome and the remainder of the kiln).

[70] *In re Estate of Talbott*, 337 P.2d 986 (Kan. 1959) (plumbing work was performed in a substandard fashion when the plumbing fixtures broke and the house was flooded).

[71] *Melody Home Manufacturing Co. v. Barnes*, 741 S.W.2d 349, 355 (Tex. 1987) ("The jurors had sufficient knowledge to find that the failure to connect a washing machine drain would not be considered good and workmanlike by those capable of judging repair work.").

[72] *Garcia v. Color Tile Distributing Co.*, 408 P.2d 145, 148 (N.M. 1965) ("[T]here was substantial evidence that the defendant, which held itself out as an expert, was negligent in proceeding with the installation of the linoleum after approving the use of nails which were too short for the intended purpose.").

[73] *Wimmer*, 406 A.2d at 93 ("Their argument confuses the implied warranty of habitability, breach of which requires that the defect be of sufficient magnitude to render the dwelling unsuitable for habitation, and the implied warranty of workmanlike performance, which requires only that a house be constructed in a reasonably skillful and workmanlike manner."); *Ribando*, 588 S.W.2d at 123 ("This case is therefore controlled by the old, well established doctrine of an implied warranty or condition of good workmanship which existed prior to *Old Warson* and still exists independent of the new doctrine of implied warranty of habitability."); *Moglia*, 700 N.W.2d 608 (recognizing the implied duty to perform in workmanlike manner but not the implied warranty of habitability).

*Bluewater Construction, Inc. v. Gary Hill and Wanda Hill*
Case No. ST-2020-CV-00212
Memorandum Opinion and Order
Page 12 of 20

2022 VI Super 13

manner reasonable given the circumstances of the project and consistent with a workman of average skill and experience in their field); and (3) damages to the plaintiff.[74] However, as detailed in the plethora of cases cited above,[75] this cause of action has been limited and extended in a variety of ways throughout the United States, so further inquiry into its extents and confines is necessary.

¶26    While some jurisdictions offer the implied warranty only to first-time home buyers buying from a builder-vendor, others extend it to those not in privity with the builder or contractor. Given the limited geographical size of the islands, the unique building conditions specific to each island,[76] a housing market predominated by the sale of vacant for-sale homes,[77] and a relative dearth of construction of single-family homes versus the construction of timeshares, condominiums, and

---

[74] *Oettinger v. Hiatt*, No. A-12-468, 2013 Neb. App. LEXIS 77, at *12 (Neb. Ct. App. 2013) ("The *Henggeler* opinion demonstrates that there are three elements required to prove breach of an implied warranty of workmanlike performance: a party must prove that an implied warranty existed, breach of that warranty, and damage caused by the breach."); *see also Nautilus Ins. Co. v. A Best Am. Roofing, LLC*, EP-18-CV-320-PRM, 2019 U.S. Dist. LEXIS 57372, at *15 (W.D. Tex. 2019) ("The following are the elements of a cause of action for breach of the implied warranty of good and workmanlike performance of services: 1. The defendant sold services to the plaintiff. 2. The services consisted of the repair or modification of the plaintiff's existing tangible goods or property. 3. The defendant did not perform the services in a good and workmanlike manner. 4. The plaintiff suffered injury.").

[75] *See supra* n.59.

[76] All islands in the United States Virgin Islands necessarily require the importation of some building materials. Additionally, St. John is largely (roughly 60%) a nationally protected park; St. Thomas is very mountainous and covered in dense vegetation in some parts and rugged hills in others; and St. Croix is flatter with more farmland. All these factors affect the price of building a new home in the U.S. Virgin Islands in addition to where and how it might be done. *See* NATIONAL PARK SERVICE, *St. John, V.I.: Virgin Islands National Park*, https://www.nps.gov/articles/virginislands.htm (last visited Oct. 15, 2021) ("Virgin Islands National Park covers roughly 60% of St. John Island in the United States Virgin Islands."); The Editors of Encyclopedia Britannica, *St. Thomas*, ENCYCLOPEDIA BRITANNICA, (Feb. 13, 2018) https://www.britannica.com/place/Saint-Thomas-island-United-States-Virgin-Islands (last visited Oct. 15, 2021) ("The island is volcanic, rising to a maximum elevation of 1,550 feet (474 metres); a chain of rugged hills with little vegetation runs east-west."); The Editors of Encyclopedia Britannica, *St. Croix*, ENCYCLOPEDIA BRITANNICA, (Feb. 15, 2018) https://www.britannica.com/place/Saint-Croix (last visited Oct. 15, 2021) ("Saint Croix, largest island of the U.S. Virgin Islands . . . is the only island of the group with an extensive plain, most of which is cultivated. A meagre growth of secondary scrub has replaced former seasonal forests, which were sacrificed for sugarcane plantations."); *see also* Office of Policy Development and Research, *Comprehensive Housing Market Analysis United States Virgin Islands*, U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, 8 (Aug. 1. 2017), https://www.huduser.gov/portal /publications/pdf/USVI-comp.pdf (last accessed Oct. 15, 2021) ("The sales market on the island of St. John accounts only for about 10 percent of all home sales in the territory. The Virgin Islands National Park covers approximately 60 percent of the island, making developable land scarce but very desirable, and homes prices are notably higher than on the islands of St. Thomas and St. Croix.").

[77] Office of Policy Development and Research, *Comprehensive Housing Market Analysis United States Virgin Islands*, U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, 1 (Aug. 1. 2017), https://www.huduser.gov/portal /publications/pdf/USVI-comp.pdf (last accessed Oct. 15, 2021) ("The sales housing market in the USVI is currently soft, with population outflows caused by weak economic conditions, leading to increased numbers of vacant for-sale homes.").

*Bluewater Construction, Inc. v. Gary Hill and Wanda Hill*
Case No. ST-2020-CV-00212
Memorandum Opinion and Order
Page 13 of 20

**2022 VI Super 13**

resort-style units,[78] a rule protecting only the first home buyer of a newly constructed home would be of limited value in protecting Virgin Islanders and other consumers in the territory.[79]

¶27    Furthermore, the reasons courts have moved away from the privity requirement are exceedingly persuasive as matters of law and public policy, including: "defects in a house will not manifest themselves for a considerable period of time";[80] "[w]e are an increasingly mobile people; a builder-vendor should know that a house he builds might be resold within a relatively short period of time";[81] "[i]nterposing a first purchaser as a bar to recovery 'might encourage sham first sales to insulate builders from liability.'";[82] there is no reason why "the original owner should have the benefits of an implied warranty [for] recovery and the next owner should not simply because there has been a transfer";[83] "[l]ike an initial buyer, the subsequent purchaser has little opportunity to inspect and little experience and knowledge about construction";[84] "as a society, we have evolved from an era when caveat emptor ruled the legal world to one where, at least in consumer transactions, caveat venditor is the heir apparent to this crown";[85] and others.[86] Moreover, existing homes often may require modifications, homeowners frequently add additions, and many structures in addition to homes are necessary to maintain a vibrant economy. The Court therefore extends the protection of the implied warranty of good workmanship to buyers not in privity with the contractor or workman and the Court extends the warranty to both the construction of homes as well as other structures not intended for use primarily as a dwelling.[87]

¶28    Additionally, for the reasons stated above, as well as the particular climatic problems faced by Virgin Islanders,[88] the Court holds that the implied warranty should not just be extended to new

---

[78] *Id.* at 9 ("During this period, the composition of the units permitted shifted toward condominiums, timeshares, and resort-type units. Single-family home construction, as measured by the number of homes permitted, has been relatively low in the USVI since the economic downturn in the late 2000s.").

[79] *Aronsohn,* 484 A.2d at 680 ("To require privity between the contractor and the homeowner in such a situation would defeat the purpose of the implied warranty of good workmanship and could leave innocent homeowners without a remedy for negligently built structures in their home. The contractor should not be relieved of liability for unworkmanlike construction simply because of the fortuity that the property on which he did the construction has changed hands. Nor should an innocent buyer of property be deprived of recourse against a contractor who made improvements on the property if the buyer suffers financial loss as a result of the contractor's negligent workmanship.")

[80] *Lempke v. Dagenais,* 547 A.2d 290, 295 (N.H. 1988) (quoting *Terlinde v. Neely,* 271 S.E.2d 768, 769 (S.C. 1980))

[81] *Id.* (quoting *Redarowicz v. Ohlendorf,* 441 N.E.2d 324, 330 (Ill. 1982)).

[82] *Id.* (citing *Richards v. Powercraft Homes, Inc.,* 678 P.2d 427, 430 (Ariz. 1984)).

[83] *Id.* (quoting *Moxley v. Laramie Builders, Inc.,* 600 P.2d 733, 736 (Wyo. 1979)).

[84] *Id.*

[85] *Nichols v. R.R. Beaufort & Assocs.,* 727 A.2d 174, 181 (R.I. 1988).

[86] *Id.* (listing eleven (11) reasons why the Rhode Island Supreme Court is abandoning the privity requirement).

[87] *Smith v. Breedlove,* 661 S.E.2d 67, 71 (S.C. 2008) ("A builder who contracts to construct a dwelling impliedly warrants that the work undertaken will be performed in a careful, diligent, workmanlike manner. This is distinct from an implied warranty of habitability, which arises solely out of the sale of the home. Although the warranty of workmanlike service arises out of the construction contract to which the builder is a party, a subsequent purchaser may sue a professional builder on the implied warranty of workmanlike service despite the lack of contractual privity." (citing *Kennedy,* 384 S.E.2d at 736 (1989))).

[88] The Virgin Islands are subject to earthquakes, tsunamis, hurricanes, wildfires, drought, riverine flooding, coastal flooding, coastal erosion, landslides, damaging winds, and thunderstorms. U.S. VIRGIN ISLANDS OFFICE OF DISASTER RECOVERY, *2019 Territorial Hazard Mitigation Plan Revisions,* 73 (June 12, 2020), https://www.usviodr.com/wp-

*Bluewater Construction, Inc. v. Gary Hill and Wanda Hill*
Case No. ST-2020-CV-00212
**Memorandum Opinion and Order**
**Page 14 of 20**

**2022 VI Super 13**

constructions and additions, but to repairs of existing structures as well. Generally, the damages for breach of the implied warranty of good workmanship should be the cost of repairing the defects, or replacement when repair is not possible.[89] In some situations, damages may be whichever is lower, the cost of repair or the diminution of value (as in the difference between the value of the structure had it been constructed properly compared to the actual value).[90] However, the Court reserves the power to assess other damages in unusual circumstances.[91] As with other courts, the test to be applied is one of reasonableness considering the circumstances, not "perfection," and with regard to what a workman of average skill and experience would produce.[92]

¶29    Further, given the broad range of potential defects and cases, a single timeframe in which to bring the action would not be in the interest of justice or public policy. Thus, the Court holds that the implied warranty exists for a reasonable time,[93] taking into consideration the type of defect, when the work was completed, whether there was a reasonably prudent inspection, and when it would be reasonable to discover the defect.[94] The statute of limitations on bringing a cause of action premised on the breach of the implied warranty begins running upon the discovery of the defect as long as it was discovered within this reasonable timeframe. Lastly, in keeping in line with the trend in the law to protect consumers ignorant of the increasingly complex products and services that are necessary in modern society, the implied warranty of good workmanship is not waivable or subject to disclaimer.[95] The implied warranty of good workmanship arises as an operation of law and while parties are free to expressly adopt a higher standard, they may not contract for a lower standard.

---

[89] *See, e.g.*, *Williams*, 748 So.2d at 49 ("Damages for the breach of an implied warranty of good workmanship are generally the cost of repairing the defects. However, when repair is impossible, the proper remedy is replacement." (citations omitted)).

content/uploads/2019/09/2019-Territorial-Hazard-Mitigation-Plan_Revisions_29May2020-6.12.20.pdf (last accessed Oct. 15, 2021).

[89] *See, e.g.*, *Williams*, 748 So.2d at 49 ("Damages for the breach of an implied warranty of good workmanship are generally the cost of repairing the defects. However, when repair is impossible, the proper remedy is replacement." (citations omitted)).

[90] *Ribando*, 588 S.W.2d at 124 ("The basic rule of damages in this situation is that plaintiffs are entitled to whichever is lower, as between the cost of repair and the diminution of value (diminution meaning the difference in value of the house if it had been constructed properly compared with its actual value as constructed.)").

[91] *See Melody Home Mfg. Co.*,741 S.W.2d 349 (affirming a jury's award of discretionary damages when a breach of the implied warranty of workmanlike service was knowing); *Del., Lackawaxen & Stourbridge R.R. Co. v. Star Trak, Inc.*, NO. 3:18-CV-0480, 2018 U.S. Dist. LEXIS 183035 (Mid. D.Pa. 2018) (allowing a claim for breach of implied warranty of good workmanship to go forward for restoration and repair expenses, as well as lost income and other damages).

[92] *Davencourt at Pilgrims Landing Homeowners Ass'n*, 221 P.3d at 252 (citing *Albrecht v. Clifford*, 767 N.E.2d 42, 45 n.7 (Mass. 2002)) (quotations omitted) ("Some courts define the implied warranty of workmanlike manner as the quality of work that would be done by a worker of average skill and intelligence."); *Hammond Lumber Co. v. Trask*, NO. CV-14-155, 2016 Me. Super. LEXIS 194, at *7 (Me. Super. Ct. 2016) (citing *Wimmer*, 406 A.2d 88) ("The test is one of reasonableness, not perfection, the standard being, ordinarily, the quality of work that would be done by a worker of average skill and intelligence.").

[93] *Elden*, 631 P.2d at 741 ("In so ruling, we held that such an implied warranty exists for a reasonable time.").

[94] *Moglia*, 700 N.W.2d at 616 ("Our extension of liability is thus limited to latent defects which manifest themselves after the subsequent purchase and are not discoverable by the subsequent purchaser's reasonably prudent inspection at the time of the subsequent purchase.").

[95] *See Melody Home Mfg. Co.*, 741 S.W.2d at 355 ("Consistent with the trend in recent consumer protection legislation and sound public policy, we further hold that the implied warranty that repair or modification services of existing tangible goods or property will be performed in a good and workmanlike manner may not be waived or disclaimed.").

*Bluewater Construction, Inc. v. Gary Hill and Wanda Hill*
Case No. ST-2020-CV-00212
Memorandum Opinion and Order
Page 15 of 20

2022 VI Super 13

### D. Negligence.

¶30    As the Virgin Islands Supreme Court stated in *Aubain v. Kazi Foods of the V.I., Inc.,*[96] "[t]he foundational elements of a negligence cause of action are: (1) a legal duty of care to the plaintiff; (2) defendant's breach of that duty of care; (3) factual and legal causation; and (4) damages."[97]

### E. Conversion.

¶31    The Virgin Islands Supreme Court has declared that "[c]onversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel."[98] "The Plaintiff must show (1) a property interest in the goods; [and] (2) the right to their possession at the time of the alleged conversion."[99]

### F. Civil Conspiracy.

¶32    In *Isaac v. Crichlow*,[100] this Court conducted a *Banks* analysis to determine the applicable civil conspiracy rule for the Virgin Islands.[101] The Court concluded that the Restatement (Second) of Torts § 876(a) best reflected the common law of this jurisdiction.[102] Section 876(a) states: "For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he does a tortious act in concert with the other or pursuant to a common design with him."[103]

### G. Restitution and Unjust Enrichment/Quantum Meruit.

¶33    While the Hills make a claim of "restitution" in their First Amended Counterclaim,[104] restitution is more aptly classified as a remedy, not a cause of action.[105] The Hills' claim is better defined as a claim of "unjust enrichment."[106] Therefore the Court will outline the elements of unjust enrichment below.

---

[96] 2019 V.I. 11.

[97] ¶11 (citing *Coastal Air Transp. v. Royer*, 64 V.I. 645, 651 (V.I. 2016)).

[98] Ross v. Hodge, 58 V.I. 292, 308 (V.I. 2013) (quoting RESTATEMENT (SECOND) OF TORTS § 222A(1) (1965)).

[99] *Id.* at 309 (quoting *Bradford v. Dumond*, 675 A.2d 957, 962 (Me. 1996)).

[100] 63 V.I. 38 (V.I. Super. Ct. 2015).

[101] *Id.* at 64-65 ("The Virgin Islands Supreme Court has not explicitly conducted a Banks analysis to adopt the common law elements of civil conspiracy. Therefore, a Banks analysis must be conducted to determine the applicable common law and soundest rule for the Virgin Islands.").

[102] *Id.* at 64.

[103] RESTATEMENT (SECOND) OF TORTS § 876(a) (1979).

[104] Countercl. Pls.' First Am. Countercl. 13.

[105] RESTATEMENT (FIRST) OF RESTITUTION § 1 (1937) ("A person who has been unjustly enriched at the expense of another is required to make restitution to the other.").

[106] The Hills' "restitution" claim recognizes as much in their allegations, as they state "[b]oth Bluewater and Coffelt (or either of them) were *unjustly enriched* at the expense of the Hills" and "[b]oth Bluewater and Coffelt (or either of them) obtained a benefit or were *enriched*[.]" Countercl. Pls.' First Am. Countercl. 13 (emphasis added).

*Bluewater Construction, Inc. v. Gary Hill and Wanda Hill*
Case No. ST-2020-CV-00212
**Memorandum Opinion and Order**
**Page 16 of 20**

**2022 VI Super 13**

¶34    In *Walters v. Walters*,[107] the Virgin Islands conducted a *Banks* analysis and adopted what it determined to be the soundest rule for the Virgin Islands for a claim of unjust enrichment, also sometimes called "quantum meruit."[108] Concluding that "an unjust enrichment cause of action must have a concrete set of elements in order to further the deterrence purpose of tort law,"[109] the *Walters* Court declared that the plaintiff must prove the following elements for an unjust enrichment action:

> (1) that the defendant was enriched, (2) that such enrichment was at the plaintiff's expense, (3) that the defendant had appreciation or knowledge of the benefit, and (4) that the circumstances were such that in equity or good conscience the defendant should return the money or property to the plaintiff.[110]

### H. Declaratory Judgment.

¶35    Declaratory judgments in the Virgin Islands are governed by V.I. CODE. ANN. tit. 5 §§ 1261-1272. Section 1261 provides the scope of declaratory judgments in the Virgin Islands and states:

> Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree.[111]

¶36    Section 1262 grants the Court the power to construe a variety of documents, as well as a person's "rights, status or other legal relations."[112]

### III.    ANALYSIS

¶37    The Hills have sufficiently plead their causes of action against Bluewater and Coffelt under the applicable standard of Virgin Islands Rule of Civil Procedure 12(b)(6).

---

[107] 60 V.I. 768 (V.I. 2014).

[108] *Id.* at 776 ("A cause of action for quantum meruit, also known as unjust enrichment, will ordinarily lie in a case where the defendant "receive[s] something of value to which he is not entitled and which he should restore" to the plaintiff.").

[109] *Id.* at 779.

[110] *Id.* at 779-80.

[111] 5 V.I.C. § 1261.

[112] 5 V.I.C. § 1262 ("Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder.").

*Bluewater Construction, Inc. v. Gary Hill and Wanda Hill*
Case No. ST-2020-CV-00212
Memorandum Opinion and Order
Page 17 of 20

2022 VI Super 13

### A. Breach of Contract against Bluewater.

¶38    Bluewater argues that the Hills cannot claim there was a breach of a contract because there is no agreement between Bluewater and the Hills. However, the Hills are arguing that they are the intended third-party beneficiaries of a contract, not that they had an agreement with Bluewater. The Hills allege that Bluewater had an agreement with Springboard to install windows for the Hills' home. Plainly, the contract between Bluewater and Springboard benefits the Hills. The Hills allege the windows were not installed properly which caused them to leak in violation of Bluewater's contractual duty to install them in a professional and workmanlike manner and "in accordance with accepted trade practice."[113] The Hills have plead sufficient factual allegations which, taken as true, are enough to infer that Bluewater has breached a contract intended to benefit the Hills. Accordingly, this claim will not be dismissed.

### B. Breach of the Implied Warranty of Good Workmanship against Bluewater.

¶39    Bluewater and Coffelt argue that the Hills fail to state what the existing standards of construction are or how the installation of windows was unworkmanlike.[114] Bluewater and Coffelt also argue that because the Hills allege that Bluewater failed to use sound materials, they cannot also argue that Bluewater did not furnish any materials.[115] The Hills have alleged that Bluewater was subcontracted to perform work for their benefit; that Bluewater failed to use the proper materials or to apply them properly in the installation of their windows; and that Bluewater's failure to construct the windows in a good and workmanlike fashion resulted in them leaking. It is not contradictory to state that in addition to Bluewater not using sound materials, Bluewater did not supply sound materials – one cannot use what one does not have. Because the Hills have alleged facts which show the existence of the implied warranty of good workmanship, a breach of that warranty, and resulting damages, the Hills have satisfactorily plead their claim of Breach of the Implied Warranty of Good Workmanship and this claim will not be dismissed at this stage.

### C. Negligence against Bluewater.

¶40    Bluewater contends that the Hills have not shown how Bluewater owed the Hills a legal duty, or how it breached a duty to the Hills. However, the Hills have alleged that Bluewater owed them a duty to install the windows in a professional manner, that the Hills gave specific guidance and requests as to their installation, Bluewater failed to follow this guidance or correct defects in its work, and that as a result the Hills were damaged from water leaks and the cost of repairing the work. At this stage of the proceedings, the Hills have satisfactorily plead factual allegations to put Bluewater on notice of a Negligence claim. Thus, this claim will not be dismissed.

---

[113] Countercl. Pls.' First Am. Countercl. 6.
[114] Countercl. Pls.' First Am. Countercl. 4.
[115] Countercl. Pls.' First Am. Countercl. 4-5.

*Bluewater Construction, Inc. v. Gary Hill and Wanda Hill*
Case No. ST-2020-CV-00212
Memorandum Opinion and Order
Page 18 of 20

2022 VI Super 13

### D. Conversion against Bluewater and Coffelt.

¶41    Bluewater and Coffelt insist that the Conversion count should be dismissed since Bluewater "had no intent to interfere with Hill's property since Bluewater believed it had a proper agreement to lease the scaffolding" because "Bluewater believed that it was properly renting the scaffolding based on the word of Coffelt."[116] The Hills counter that is a factual determination that cannot be made at this stage of the proceeding. The Hills have alleged a property interest in the scaffolding and that Bluewater interfered with their use of it by using it at other job sites. Looking at these allegations in the light most favorable to the Hills, the Court cannot take as granted Bluewater's assertion as to its own state of mind. Therefore, at this stage, dismissal of the Conversion claim would be improper.

### E. Civil Conspiracy against Bluewater and Coffelt.

¶42    Bluewater and Coffelt proffer that "[t]here cannot be a conspiracy to commit a tort when one party believes that it agreed to purchase/rent the scaffolding" and that the Hills do not provide "specific facts as to how the civil conspiracy transpired."[117] However, the Hills have alleged that Bluewater and Coffelt acted in concert to lease the Hills' scaffolding without their permission, that Coffelt subsequently left his former employer and began working for Bluewater, and that Bluewater recognized it had 'rented' the scaffolding from Coffelt while never having actually paid Coffelt or the Hills for use of the scaffolding. Under the notice-pleading requirements of the Virgin Islands, the Hills have sufficiently alleged enough facts which, taken as true, put Bluewater and Coffelt on notice of a Civil Conspiracy claim against them. At this stage in the proceeding, dismissal of this count would be premature.

### F. Unjust Enrichment against Bluewater and Coffelt.

¶43    While the Hills have made a claim for restitution in their First Amended Complaint, as stated above this claim is more aptly classified as one for Unjust Enrichment. While Bluewater and Coffelt argue that "restitution is not available when an adequate remedy at law is available,"[118] the Third Circuit case cited by Bluewater and Coffelt makes clear that the plaintiff in that case could not prevail on their claim for a restitution reward because it had prevailed on its breach of contract claim.[119] Here, the Hills have not yet prevailed on any claim, but are only in the pleading stage. Further, not only do the Hills deny there was the existence of a contract to use the scaffolding, making a claim for breach of contract unavailable to them, even if that were not the case the Hills are also permitted to plead in the alternative, as well as pursue different, even

---

[116] Countercl. Defs.' Mot. To Dismiss 6-7.
[117] Countercl. Defs.' Mot. To Dismiss 8.
[118] Countercl. Defs.' Mot. To Dismiss 9.
[119] *Native Son, Inc. v. OME Sales, LLC*, No. 2012-93, 2016 U.S. Dist. LEXIS 31375, at *12-13 (D.V.I. Mar. 11, 2016) ("Here, Native Son has an adequate remedy at law. Indeed, Native Son has prevailed on its breach of contract claim. As such, a claim of restitution is unavailable to Native Son.").

*Bluewater Construction, Inc. v. Gary Hill and Wanda Hill*
Case No. ST-2020-CV-00212
**Memorandum Opinion and Order**
**Page 19 of 20**

**2022 VI Super 13**

inconsistent, alternate relief.[120] Lastly, the use of the scaffolding was manifestly beneficial to Bluewater and Coffelt. Dismissal of this claim is not appropriate at the pleading stage of this case.

### G. Declaratory Judgment against Bluewater.

¶44    Bluewater and Coffelt, citing to the Eleventh Circuit, argue that equitable relief is only available in the absence of an adequate remedy at law, and that the Hills do not seek to have any legal relation or status determined so their Declaratory Judgment claim should be dismissed.[121] However, 5 V.I.C. § 1261 allows a Declaratory Judgment claim to be made whether or not other relief is sought.

¶45    Further, the Hills do seek a determination as to their legal relationships and rights: Bluewater and Coffelt allege the existence of an agreement to use scaffolding, and the Hills deny the existence of this contract; the Hills allege that Bluewater threatened them with criminal prosecution for the unlicensed leasing of scaffolding when they demanded compensation and the Hills seek to enjoin Bluewater and Coffelt from issuing threats or engaging in further retaliation against them; and lastly, the Hills seek a determination as to whether their contractual relationship with Springboard legally justifies a lien on their property in favor of Bluewater. The Hills have plead facts which, taken as true, would plausibly give rise to an entitlement of relief. Thus, the Declaratory Judgment claim will not be dismissed.

### H. The Court will not dismiss the First Amended Counterclaim on account of V.I. R. Civ. P. 12(b)(7).

¶46    Bluewater and Coffelt in their Motion To Dismiss state that they move to dismiss the Hills First Amended Counterclaim pursuant to both Virgin Islands Rule of Civil Procedure 12(b)(6) as well as Rule 12(b)(7).[122] However, Bluewater and Coffelt proffer no argumentation as to how the Hills' First Amended Counterclaim violates Rule 12(b)(7).[123] The Court notes that on August 28, 2020, Bluewater moved to dismiss the Hills' original Counterclaim for, *inter alia*, a violation of Rule 12(b)(7), failure to join a party under Rule 19; that the Hills subsequently amended their Counterclaim on September 17, 2020; and on September 22, 2021, the Court granted the Hills leave to amend their Counterclaim and denied Bluewater's first motion to dismiss as moot. Since Bluewater and Coffelt proffer no reasoning as to why the Hills First Amended Counterclaim should be dismissed under Rule 12(b)(7), and the inclusion of Rule 12(b)(7) in the instant Motion to Dismiss appears to be a scrivener's error, the Court will deny Bluewater and Coffelt's Rule 12(b)(7) Motion To Dismiss.

---

[120] *See, e.g., Augustin v. Hess Oil Virgin Islands Corp.*, 67 V.I. 488, 521 (V.I. Super. Ct. 2017) ("[A] plaintiff may plead different, even inconsistent, claims in the alternative, and also pursue alternate theories of relief." (quoting *Mitchell v. General Engineering Corporation*, 67 V.I. 271, 285 n.7 (V.I. Super. Ct. 2017)).

[121] Countercl. Defs.' Mot. To Dismiss 10-11.

[122] Countercl. Defs.' Mot. To Dismiss 1.

[123] V.I. R. Civ. P. 12(b)(7) states: "Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion . . . failure to join a party under Rule 19."

*Bluewater Construction, Inc. v. Gary Hill and Wanda Hill*
Case No. ST-2020-CV-00212
**Memorandum Opinion and Order**
Page 20 of 20

2022 VI Super 13

## IV.  CONCLUSION

¶47     Plaintiffs the Hills have filed counterclaims against defendants Bluewater and Coffelt, concerning allegedly leaky windows installed by defendants as well as scaffolding purchased by the Hills but utilized by Bluewater and Coffelt on other construction sites. These counterclaims are: (1) Breach of Contract against Bluewater; (2) Breach of Implied Warranty of Good Workmanship against Bluewater; (3) Negligence against Bluewater; (4) Conversion against Bluewater and Coffelt; (5) Civil Conspiracy against Bluewater and Coffelt; (6) Restitution against Bluewater and Coffelt; and (7) Declaratory Judgment against Bluewater.

¶48     Bluewater and Coffelt move to dismiss, arguing that under the *Iqbal/Twombly* standard the Hills have not met their pleading burden. However, as the Virgin Islands Supreme Court has made clear, the U.S. Virgin Islands remains a notice pleading jurisdiction pursuant to Virgin Islands Rule of Civil Procedure 8(a). The Hills have made a sufficient showing of factual allegations, which taken as true and in a light most favorable to them, the nonmoving party, adequately put Bluewater and Coffelt on notice of the claims against them. Additionally, as neither the Virgin Islands Supreme Court or the Virgin Islands Superior Court has recognized the Implied Warranty of Good Workmanship, the Court has conducted a *Banks* analysis and has adopted it as a part of the Virgin Islands common law, consistent with the elements and parameters contained herein.

¶49     Accordingly, it is hereby

        **ORDERED** that Counterclaim Defendants Bluewater Construction, Inc. And Tony Coffelt's Reply To Hill's First Amended Complaint, filed May 10, 2021, is **DENIED**; and it is further

        **ORDERED** that a copy of this Memorandum Opinion and Order shall be directed to counsel of record.

**DATED:** February **11**, 2022          _____
                                          **DENISE M. FRANCOIS**
                                          Judge of the Superior Court of the Virgin Islands

**ATTEST:**

**TAMARA CHARLES**
Clerk of the Court

BY:  _____ 2/11/2022
     **LATOYA CAMACHO**
     Court Clerk Supervisor: ____/____/____